**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JEFFREY HALL, | ) | 3:25-CV-988 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WARDEN CARON et al., | ) | |
| *Defendants*. | ) | July 2, 2026 |

## <u>INITIAL REVIEW ORDER REGARDING AMENDED COMPLAINT</u>

*Pro se* plaintiff Jeffrey Hall commenced this civil rights action under 42 U.S.C. § 1983 while housed at the Carl Robinson Correctional Institution ("Robinson C.I.") within the Connecticut Department of Correction ("DOC"). Plaintiff's original complaint requested injunctive relief for alleged constitutional violations related to mail tampering against DOC's District Administrator Washington, Assistant District Administrator Sexton, and Robinson C.I. Warden Caron. Compl., ECF No. 1.

After initial review under 28 U.S.C. § 1915A(a), the Court dismissed Plaintiff's complaint because it failed to comply with the pleading requirements under Federal Rule of Civil Procedure 8 and because his request for injunctive relief was rendered moot after his transfer from Robinson C.I. Initial Review Order, ECF No. 23. The Court permitted Plaintiff the opportunity to file an amended complaint. *Id.* at 4.

Plaintiff filed a timely amended complaint against the following defendants: Assistant District Administrator Sexton, District Administrator Washington, Warden Caron, Deputy and Acting Warden Ogando, Captain Danek, Lieutenant Franco, Correction Officer Ortiz, Captain Correia, Correction Officer Hrnisc, Mail Handler Mrs. Grant, and John Does 1–3. Am. Compl.,

ECF No. 31.  Plaintiff now requests damages against the defendants related to the opening of his mail that was labeled as attorney-client privileged and denial of related grievances.  *Id.* at 9.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).  Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).  The Court has thoroughly reviewed all factual allegations in the amended complaint and conducted an initial review pursuant to 28 U.S.C. § 1915A.[1]  Based on this initial review, the Court orders as follows.

## I.    FACTUAL BACKGROUND

The publicly available information on the DOC website shows that Plaintiff is a sentenced inmate now housed at the Cybulski Community Reintegration Center.[2]

The Court summarizes the facts Plaintiff alleges in his amended complaint.  On both October 22, 2024, and December 18, 2024, Robinson C.I. staff—and possibly the staff of DOC

---

[1] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).  Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  A complaint that includes only "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

[2] The Court may take judicial notice of matters of public record. *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425 (KAD), 2023 WL 1818545, at *2 n.1 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).  The publicly available DOC website shows that Plaintiff was sentenced on April 19, 2016, to a twenty-year term of incarceration.  *See* https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=397697 (last visited July 2, 2026).

U.S. Mail sorting station—opened Plaintiff's privileged legal correspondence outside of his presence.  Am. Compl., ECF No. 31, at 4, 7.

Defendant Mrs. Grant is the Robinson C.I. mail handler.  *Id.* at 7.  Defendant John Does 1, 2 and 3 are the DOC Point of Distribution/Liaison staff with the United States Postal Service.  *Id.* at 7.  All mail is sorted and delivered to the correctional institutions through their office.  *Id.*

A.  First Mail Tampering Incident

The Court infers that the first mail tampering incident occurred on October 22, 2024.  *See id.* at 4, 6.  Correction Officer Ortiz was the Legal Mail Distributor that day.  *Id.* at 6.  Plaintiff alleges Ortiz did not follow DOC Administrative Directive 10.7 and was "very uncooperative ..." *Id.*

Plaintiff further alleges that Captain Danek failed to follow the requirements under DOC Administrative Directives 10.7 and 6.6 when writing his incident report filed on November 12, 2024, about the mail tampering.  *Id.* at 5.  Captain Danek failed to initiate any type of investigation into how the top of a white manila envelope was opened outside of Plaintiff's presence.  *Id.*  Only one photo was taken, and no interview occurred with the facility mail handler, Mrs. Grant.  *Id.* Captain Danek filed his report twenty days after it was due.  *Id.* at 5.

Lieutenant Franco was the supervisory official on duty when tampering of Plaintiff's legal mail occurred on October 22, 2024.  *Id.* at 6.  In a supplemental incident report for the mail tampering, Lieutenant Franco stated that Plaintiff's legal mail was "inadvertently partially torn open." *Id.*  He also indicated that Plaintiff was present at that time and was informed of the discovery. *Id.*

B.  Second Mail Tampering Incident

The second incident appears to have occurred on December 18, 2024.  Officer Hrnisc issued an incident report dated December 18, 2024, but his report failed to include the fact that he had pushed two documents back into the envelope.  *Id.* at 7.  He became very uncooperative after Plaintiff demanded to see the supervisory officer.  *Id.*  Plaintiff alleges Officer Hrnisc failed to follow Administrative Directive 10.7 and violated Directive 6.6 by falsifying his report.  *Id.*

On January 2, 2025, Captain Correia issued an incident report for the second alleged tampering incident.  *Id.*  It was much more thorough than the report issued by Captain Danek but was still not completed in accordance with Administrative Directive 6.6, and did not refer to Administrative Directive 10.7.  *Id.*

Lieutenant Franco was also the supervisory official on duty when the second legal mail tampering incident occurred.  *Id.* at 6.  In an incident report for this alleged incident, he wrote that he "agreed" that the "envelope was not opened by custody staff."  *Id.*  Plaintiff claims this statement is false and complains that Lieutenant Franco failed to mention whether the requirements of Administrative Directive 6.6 or 10.7 were followed.  *Id.*

Mail Handler Mrs. Grant did not file any reports after being questioned by Captain Correia. *Id.* at 7.

C.  Acting Warden Ogando's Closing of Mail Tampering Incident Reports

Acting Warden Ogando closed the incident reports concerning the two mail tampering incidents with the following statement:  "We cannot determine[] who and when the mail was opened."  *Id.* 4–5.  Plaintiff complains that Ogando ignored the records from Captain Danek, Lieutenant Franco, and Officers Ortiz and Hrnisc indicating failure to adhere to Administrative Directives 6.6 and 10.7.  *Id.* at 5.

Plaintiff alleges that the staff plausibly knew the mail had not been opened accidentally, noting that none of the Robinson C.I. staff followed DOC protocol under Administrative Directive 10.7(11)(c) (Inmate Communications) concerning accidental opening of mail. *Id.* at 4.

No request was made for John Doe 1, 2 and 3 to report the two alleged incidents of tampering with Plaintiff's legal mail. *Id.* at 7.

 D.  Grievances

Plaintiff filed grievances and made requests for a federal investigation into mail tampering. *Id.* at 4.  His grievances and requests were denied by Connecticut DOC's highest levels.  *Id.*

According to Plaintiff, Assistant District Administrator Sexton and Warden Caron improperly reviewed and/or processed his administrative grievances complaining about the first legal mail tampering—IGP #116-25-048—when they denied his requests for a law enforcement investigation into the mail tampering incident. *Id*. at 5.

Plaintiff filed inmate requests and grievances about the mail tampering on December 18, 2024.  Warden Caron failed to respond to Plaintiff's inmate requests and Level 1 grievance—IGP #116-25-088—which raised the following issues: (1) Robinson staff failure to follow the procedures under Directives 6.6 and 10.7; (2) Mrs. Grant's statement reported to Officer Corriea that she did not observe any issues with the envelope in its original form; (3) Acting Warden Ogando's report statement that "who and when the mail was opened" could not be determined; and (4) the existence of surveillance video showing Plaintiff demanded the supervisory officer on December 18, 2024. *Id.* at 6–7.

District Administrator Washington later also failed to recognize that Plaintiff's legal mail was opened illegally on December 18, 2024, or that DOC procedures had been violated by Warden Caron. *Id.* at 6.

## II.    DISCUSSION

Section 1983 "provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999). A § 1983 claim has four essential elements: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; and (4) damages. *Doe v. City of Waterbury*, 453 F. Supp. 2d 537, 542 (D. Conn. 2006), *aff'd sub nom. Roe v. City of Waterbury*, 542 F.3d 31 (2d Cir. 2008).

### A.    Mail Tampering

Plaintiff maintains that all Defendants violated his constitutional rights based on the alleged tampering with his legal mail on October 22 and December 18, 2024. Plaintiff's allegations about tampering with his legal mail raise First, Sixth, and Fourteenth Amendment violation arguments. The Court concludes that Plaintiff has failed to state any plausible claims for relief.

#### 1.    *Personal Involvement*

First, Plaintiff cannot proceed against any Defendant on his mail tampering claims because he fails to allege their personal involvement in any constitutional violation. A plaintiff alleging a constitutional violation against a defendant in his or her individual capacity for monetary damages must allege how that Defendant violated his rights under the Constitution. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983"). This principle applies equally to supervisory defendants. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (recognizing that "there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions,

has violated the Constitution") (internal quotation marks omitted).  A government or prison official is not personally involved in the violation of a plaintiff's constitutional rights simply by supervising "others who committed the violation."  *Id*. at 619.

Here, Plaintiff has not alleged facts to support an inference that any Defendant was personally involved in the mail tampering.  At most, he speculates that Mrs. Grant or John Does 1, 2, and 3 may have tampered with his mail.  But Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555, 570.  The Court is not free to speculate about unpleaded facts that might be favorable to Plaintiff's claim, even when he is proceeding *pro se*.  *See Darby v. Greenman*, 14 F.4th 124, 130 n. 6 (2d Cir. 2021) ("While we construe pleaded facts in the light most favorable to the plaintiff, we can draw inferences based only on the facts actually alleged, and we are not free to speculate about unpleaded facts that might be favorable to the plaintiff").

Plaintiff complains that Warden Caron failed to respond to his administrative remedies about the mail tampering, but a prison official's failure to respond to letters or grievances is not sufficient to establish personal involvement.  *See Rogers v. Lamont*, No. 3:22-CV-66 (OAW), 2022 WL 3716446, at *4 (D. Conn. Aug. 29, 2022).  Additionally, Plaintiff's allegations indicate that certain supervisory Defendants were made aware of the two alleged incidents of mail tampering, but a prison official's mere awareness that a violation of Plaintiff's rights occurred in the past without more is insufficient to establish personal involvement.  *See Brown v. Quiros*, No. 3:25-CV-1202 (KAD), 2026 WL 242137, at *8 (D. Conn. Jan. 29, 2026) (noting prison official's after-the-fact notice of unconstitutional conduct does not constitute personal involvement in the violation); *Hayes v. Behm*, No. 3:25-CV-294 (SRU), 2025 WL 3268347, at *5 (D. Conn. Nov. 24,

2025) (allegations that prison administrator received and denied inmate's administrative appeal did not establish warden's involvement in underlying Eighth Amendment violation).

Thus, Plaintiff has not alleged any plausible involvement of any Defendant in a constitutional violation arising from the alleged two incidents of tampering with his legal mail. Nonetheless, the Court proceeds to examine whether his allegations state any viable constitutional claim. It concludes that they do not.

### 2. Deprivation of First Amendment Access to the Courts

The First Amendment, in conjunction with other constitutional provisions, guarantees prisoners of "the right of access to the courts."[3] *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see also Morello v. James*, 810 F.2d 344, 346 (2d Cir. 1987). "Interference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003).

To prevail in a section 1983 access to the courts claim, an inmate-plaintiff must demonstrate that a prison official "'actually interfered with his access to the courts or prejudiced an existing action.'" *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 345 (N.D.N.Y. 2010) (quoting *Herrera v. Scully*, 815 F. Supp. 713, 725 (S.D.N.Y. 1993)). Specifically, an inmate is required to demonstrate that he suffered an actual injury as a result of the conduct of the defendants. *Lewis*, 518 U.S. at 351–54. To demonstrate an actual injury, the plaintiff must show that he suffered "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348; *see also Harbury*, 536 U.S. at 414–15 ("Whether

---

[3] The right of access to the courts may arise under the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Due Process Clauses of the Fifth and Fourteenth Amendments, and the Equal Protection Clause of the Fourteenth Amendment. *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002).

an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost," the plaintiff "must identify a 'nonfrivolous,' 'arguable' underlying claim" that he sought to pursue or seeks to pursue in court).

Plaintiff has not alleged facts to suggest he was prejudiced by the alleged interference with his legal mail with respect to an existing or future legal action. No facts reflect that the two alleged incidents of mail tampering caused him any actual injury by impairing his legal representation or hindering his ability to pursue a non-frivolous claim. Thus, Plaintiff's access to the courts claim must be dismissed on the ground that Plaintiff has not alleged an injury resulting from any interference with his legal mail.

### 3. First Amendment Right to Free Flow of Mail

The First Amendment further protects a prisoner's right to the free flow of incoming and outgoing mail. *Davis*, 320 F.3d at 351. While both legal and non-legal mail are afforded protection under the First Amendment, non-legal mail is "afforded less protection than legal mail[.]" *Edwards v. Horn*, No. 10-CV-6194 (RJS) (JLC), 2012 WL 760172, at *7 (S.D.N.Y. Mar. 8, 2012). Additionally, outgoing mail is afforded greater protection than incoming mail. *Davis*, 320 F.3d at 351. An "isolated incident of mail tampering is usually insufficient to establish a constitutional violation." *Id.* Rather, "the inmate must show that prison officials regularly and unjustifiably interfered with the incoming legal mail." *Id.* (internal citations omitted). "[A]s few as two incidents of mail tampering can constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received." *Id*. (citing *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)).

9

Here, Plaintiff alleges no facts to suggest that Defendants engaged in an ongoing unjustified practice of tampering with Plaintiff's legal mail; two incidents are insufficient without allegations suggesting a broader, ongoing practice of censorship unjustified by a substantial government interest.  Nor do the alleged facts support an inference that the two incidents of mail tampering hindered his access to the courts or impaired his legal representation.  Accordingly, Plaintiff's right to free flow of mail claim must be dismissed for failure to state a plausible claim.

### 4. *Sixth Amendment Claim*

The Court also considers whether Plaintiff's allegations support a claim under the Sixth Amendment, as interference with Plaintiff's right to counsel in a criminal proceeding.  The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI; *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006).  Under the Sixth Amendment, a criminal defendant is constitutionally entitled to effective assistance of counsel.  *Strickland v. Washington,* 466 U.S. 668, 686 (1984).

Because Plaintiff's amended complaint contains no factual allegations that the interference with his legal mail concerned his criminal prosecution, Plaintiff cannot proceed on a plausible claim for a violation of his Sixth Amendment right to the effective assistance of counsel.  *See Wolff v. McDonnell*, 418 U.S. 539, 576 (1974) (rejecting application of Sixth Amendment to a claim that "would insulate all mail from inspection, whether related to civil or criminal matters").

### B.  Grievance Procedure Violation and Lack of Investigation

Plaintiff's amended complaint further appears to allege improper review of his administrative remedies by Deputy Administrator Washington and Warden Caron.  Such claims must also be dismissed because "[s]tate prison directives do not confer any constitutionally

protected rights on inmates" even if prison officials fail to comply with such administrative directives. *See Riddick v. Chevalier*, No. 3:11-CV-1555 (SRU), 2013 WL 4823153, at *4 (D. Conn. Sept. 9, 2013). "Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance processed properly." *Schlosser v. Manuel*, No. 3:19-CV-1444 (SRU), 2020 WL 127700, at *5 (D. Conn. Jan. 10, 2020).

Nor can Plaintiff maintain a constitutional claim that Defendants Washington and Caron hindered his ability to file a lawsuit in federal court because he cannot file grievances to satisfy the exhaustion requirement under the Prison Litigation Reform Act ("PLRA"). This is because Plaintiff could still seek redress for his claims in federal court, as his administrative remedies would be considered unavailable. *See* 42 U.S. § 1997e(a) (requiring prisoners to exhaust administrative remedies only to the extent that the remedies are available); *Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (summary order) (finding grievance restriction would not violate the plaintiff's right to petition the government because there was no similar restriction on the plaintiff's right to file civil actions and the PLRA's exhaustion requirement would not bar such actions because the grievance procedure would be deemed unavailable to the plaintiff); *see also Baltas v. Rivera*, No. 3:19-CV-1043 (MPS), 2019 WL 3944435, at *10–11 (D. Conn. Aug. 21, 2019) ("If prison officials thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation the grievance procedure would be unavailable and the inmate would be able to proceed to federal court." (internal citation omitted)).

Accordingly, Plaintiff's section 1983 claims related to the processing or review of his administrative remedies must be dismissed as not plausible. *See* 28 U.S.C. § 1915A.

C.  <u>Violations of Regulations and Directives</u>

Finally, Plaintiff's complaint alleges that various Defendants violated DOC Administrative Directives 10.7 and 6.6.  However, a prison official's failure to comply with prison regulations or administrative directives does not constitute a basis for relief under section 1983.  This is so because "a prison official's violation of a prison regulation or policy does not establish that the official has violated the Constitution or is liable to a prisoner under 42 U.S.C. § 1983."  *Fine v. UConn Med.*, No. 3:18-CV-530 (JAM), 2019 WL 236726, at *9 (D. Conn. Jan. 16, 2019) (internal citation omitted).  Accordingly, Plaintiff's section 1983 claims based on violation of DOC's regulations or administrative directives must be dismissed as not plausible.  *See* 28 U.S.C. § 1915A.

## III.  CONCLUSION

For the foregoing reasons, Plaintiff's Amended Complaint is DISMISSED.  28 U.S.C. § 1915A(b)(1).  Because Plaintiff was not able correct the deficiencies of his claims after filing an amended complaint, the Clerk is directed to enter judgment for Defendants and close this case.

**SO ORDERED** at Hartford, Connecticut, this 2nd day of July, 2026.

    */s/ Sarala V. Nagala*
    SARALA V. NAGALA
    UNITED STATES DISTRICT JUDGE